PITTSBURGH TERMINAL
CORPORATION

v.

The BALTIMORE AND OHIO RAIL-
ROAD COMPANY, W. James Price, Al-
onzo G. Decker, Jr., James Parker No-
lan, Frederick Deane, Jr., James L.
O'Keefe, Gregory S. Devine, Fay A. Le-
Fevre, Nicholas T. Camicia, Dr. Milton
S. Eisenhower, Steven Muller, John K.
Stevenson, Hays T. Watkins, Howard E.
Simpson and Cyrus S. Eaton, all Di-
rectors or former Directors of the Bal-
timore and Ohio Railroad, The Chesa-
peake and Ohio Railroad and/or the
Chessie System, The Chesapeake and
Ohio Railway Company and Chessie
System, Inc.

Monroe GUTTMANN, Loretta Guttmann,
Janet Rees and Evelyn Bittner

v.

The BALTIMORE AND OHIO RAIL-
ROAD COMPANY, W. James Price, Al-
onzo G. Decker, Jr., James Parker No-
lan, Frederick Deane, Jr., James L.
O'Keefe, Gregory S. Devine, Fay A. Le-
Fevre, Nicholas T. Camicia, Dr. Milton
S. Eisenhower, Steven Muller, John K.
Stevenson, Hays T. Watkins, Howard E.
Simpson and Cyrus S. Eaton, all Di-
rectors or former Directors of the Bal-
timore and Ohio Railroad, The Chesa-
peake and Ohio Railroad and/or the
Chessie System, The Chesapeake and
Ohio Railway Company and Chessie
System, Inc.

Civ. A. Nos. 77–1455, 79–94.

United States District Court,
W.D. Pennsylvania.

May 8, 1984.

Michael P. Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for plaintiffs.

Anthony J. Basinski, Richard Wentley, John J. Repcheck, Houston, Harbaugh, Sharlock, Repcheck & Lippard, Pittsburgh, Pa., for defendants.

OPINION

WEBER, District Judge.

This complex and long-running securities litigation is now before us on remand from the Court of Appeals for the selection of an appropriate remedy for the defendants' violation of the securities law. Plaintiffs have moved for leave to take additional discovery for the purpose of formulating a remedy. In the alternative, plaintiffs seek a favorable damage award based on the existing record. Defendants have responded opposing any further discovery, and advancing rescission as appropriate relief. The parties have fully briefed these matters, we have reviewed the voluminous record, and the issue of remedy is now in proper posture for disposition.

## I. FACTS

A condensed recitation of the facts is necessary here. A more detailed understanding of the factual and procedural history of this litigation may be gleaned from previous opinions.[1]

Plaintiffs are holders of B & O Class A convertible debentures, acquired prior to December 1977, and maturing in 2010. The debentures pay 4.5% interest and are convertible to B & O common stock at any date prior to maturity. These B & O debentures are listed and traded on the New York Stock Exchange.

The central corporate figure in this complicated organizational table is the B & O Railroad. In December, 1977, the C & O, a

---

1. 446 F.Supp. 656 (W.D.Pa.1978) (Knox, D.J.) (preliminary injunction granted); 578 F.2d 1375 (3d Cir.1978) (order dissolving preliminary injunction); 509 F.Supp. 1002 (W.D.Pa.1981) (Knox, D.J.) (opinion following non-jury trial, judgment for defendants); 680 F.2d 933 (3d Cir.1982) (reversing as to liability and remanding for remedy); cert. denied, 459 U.S. 1056, 103 S.Ct. 475–6, 74 L.Ed.2d 621 (1982); see also, related case, *Lowry v. The Baltimore & Ohio Railroad Co.,* 707 F.2d 721 (3d Cir.1983) (en banc, per curiam) (affirming in part, reversing in part and remanding); 711 F.2d 1207 (3d Cir.1983) (en banc) (petition for modification of judgment denied, Gibbons, J., dissenting); cert. denied, —— U.S. ——, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983).

Virginia corporation, owned 99.63% of B & O's common stock. The C & O in turn was wholly owned by the Chessie System, Inc., a holding company.

B & O common stock was once listed and traded on the New York Stock Exchange. By 1964 C & O had acquired 99% of B & O common, trading ceased and the stock was delisted. For 17 years no dividend was declared on B & O common stock, the last being in 1960.

In 1977, the B & O was the owner of a wide variety of properties, including both rail and non-rail assets. Because ICC regulations hampered development of the non-rail assets, a corporate reorganization plan was devised. Reduced to its simplest form, the plan essentially provided for the segregation of B & O's rail and non-rail assets, transfer of the non-rail assets to a wholly owned subsidiary titled Mid Allegheny Corporation (MAC), and distribution of the MAC common stock to B & O shareholders on a share for share basis. The scope of this reorganization was significant, involving the transfer of large amounts of potentially valuable real estate.

The properties selected for transfer to MAC were primarily non-rail assets with development potential which could not be effectively realized while the property remained under the Railroad's aegis with the attendant ICC restrictions. Most of these properties carried hopelessly outdated book values, and recent appraisals were rarely available.

In order to conserve time and money, the B & O sought to avoid registration of the MAC stock with the SEC. Registration would have required lengthy and expensive appraisals of the properties transferred to MAC, perhaps consuming up to 10 years.

To avoid registration, the B & O sought a no-action letter from the SEC. Because there were so few remaining B & O shareholders, a no-action letter was likely. However, the defendants recognized that an increase in the number of minority shareholders might force registration. To avoid this possibility, B & O called its Convertible Income Bonds for redemption to prevent their conversion to B & O common stock. A different tactic was employed to prevent conversion of the debentures.

On December 13, 1977, the reorganization plan was put into effect by the B & O Board of Directors. The selected non-rail assets were transferred to MAC. The dividend in MAC stock was then declared to all B & O shareholders as of that same date. No prior notice was given of the dividend.

The effect of this action was to prevent the debenture holders from participating in the MAC dividend by depriving them of an opportunity to convert to B & O common stock in anticipation of the dividend. With the debenture holders effectively frozen out, registration was avoided.

Shortly after the Board action of December 13, 1977, Pittsburgh Terminal filed suit seeking an injunction against payment of the dividend in MAC stock. A preliminary injunction was granted by the District Court but was dissolved on appeal when the defendants agreed to hold sufficient shares of B & O and MAC stock to satisfy the claims of the plaintiffs and those similarly situated should they be successful in this litigation. See 446 F.Supp. 656 (W.D. Pa.1978) (Knox, D.J.); 578 F.2d 1375 (3d Cir.1978).

After a non-jury trial, Judge Knox rejected each of plaintiffs' claims and entered judgment for the defendants. 509 F.Supp. 1002 (W.D.Pa.1981). On appeal the Third Circuit reversed. 680 F.2d 933 (3d Cir. 1982). The Court's majority decision rested on a holding that SEC Rule 10b–17, 17 C.F.R. § 240.10b–17, imposed on the defendants a duty to provide prior notice of the MAC dividend to debenture holders. Failure to satisfy this obligation constituted a violation of Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b).

The Court of Appeals remanded for the determination of an appropriate remedy. This is no simple task, as recognized by both the original trial judge and the appellate panel. See, 509 F.Supp. at 1010; 680

**1300**

F.2d at 943. We now resolutely address the question.

## II. PLAINTIFFS' MOTION TO REOPEN DISCOVERY

Plaintiffs seek permission to engage in another round of discovery to assist them in selecting and formulating a remedy. Specifically, plaintiffs seek to inquire into MAC's transactions since the close of discovery, appraisals of MAC assets after 1979, and MAC's dealings with affiliates and subsidiaries.

Plaintiffs contend that such discovery is necessary to enable them to a ascertain MAC's current value, to compute an accurate damages figure, to make an informed decision on conversion as a remedy, and to identify any improper transactions between related companies which have worked to MAC's disadvantage.

█ A trial court has wide discretion in discovery matters. E.g. *Montecatini Edison S.p.A. v. E.I. DuPont de Nemours Co.*, 434 F.2d 70 (3d Cir.1970); *Swanner v. United States*, 406 F.2d 716 (5th Cir.1969). This court is expressly empowered to set necessary limitations on discovery by Fed. R.Civ.P. 26(g). Specifically, the question of whether to reopen proceedings on remand is committed to the sound discretion of the District Court. *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 891, 894 (3d Cir.1975). However, remand is typically not intended to permit a party to fill in the gaps in the original record. *Id.*, at 894; *Moses Lake Homes, Inc. v. Grant County*, 276 F.2d 836, 853 (9th Cir.1960).

█ A number of factors militate against the re-opening of discovery. First of all, plaintiffs have already conducted 3 years of extensive discovery, almost exclusively directed to the question of damages. Plaintiffs have viewed stacks of documents and compiled voluminous deposition transcripts. Significant discovery on this issue has already been had.

Secondly, the issue of damages has already been fully tried. Plaintiffs sought bifurcation between liability and damages, but this motion was denied. Judge Knox presided over the non-jury trial in which damage evidence was presented. Plaintiffs have had full opportunity to make presentation of evidence on remedy.

Plaintiffs contend that the additional discovery would permit a more accurate computation of the value of properties transferred from B & O to MAC in 1977. Because of the difficulties presented by outdated book values and the absence of recent appraisals, such a result would be desirable. However, while some additional information may have been compiled by MAC since the close of discovery, it appears that MAC still has vast amounts of property on which neither plaintiffs nor defendants can place a fair value. Because additional discovery would not resolve this difficulty of valuation, it would appear unwise.[2]

Plaintiffs insist that further discovery is necessary to permit them to make an informed decision on whether to pursue the MAC stock as a remedy, as opposed to damages. Certainly, such information might be helpful, but there does not appear to be sufficient need for it to justify the delay and expense attendant to re-opening discovery here. In 1977, MAC was a wild card, an unknown quantity. Today, plaintiffs have had the benefit of extensive discovery on MAC's assets, access to information released to the public by MAC and the B & O, and the opportunity to observe MAC's operations over the past 6 years. The acquisition of information from these sources reduces the need for further formal discovery on the matter.

Furthermore, plaintiffs stand today in better position as to information than if defendants had provided notice and opportunity to convert in 1977. Then plaintiffs would have had a short period of time and limited information on MAC with which to

**2.** Here lies the distinction between this case and *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 891 (3rd Cir.1975) which allowed admission of further evidence on damages. Here it appears the effort would be futile.

decide whether to convert. Today they have infinitely more information on MAC, although the picture remains incomplete. The purpose of a rescissory remedy, such as awarding a belated opportunity to convert and share in the MAC dividend, is to place the injured party in the same position he would have enjoyed but for the defendant's actions. With the wealth of information on MAC now available to the plaintiffs, they stand in a better position than they would have had in 1977. Further discovery is therefore not justified.

For the reasons stated above, plaintiffs' motion to re-open discovery will be denied. The parties previously compiled a complete record on damages and no sufficient reason to supplement that record has been advanced.

## III. DAMAGES

The original complaint in this action at 77–1204 sought only injunctive relief. With this in mind the Court of Appeals dissolved a preliminary injunction against payment of the MAC dividend when defendants agreed to hold sufficient shares of B & O and MAC to cover all B & O debenture holders. Plaintiffs later amended the complaint to add a claim for damages.

At the non-jury trial before Judge Knox, the parties presented evidence on damages. The evidence was limited, consisted of widely conflicting figures, and presented no readily acceptable formula for damages. Although Judge Knox outlined some of the problems with fashioning a remedy in this case, he made no findings on damages because he ruled for the defendants on liability. The Court of Appeals reversed and has now remanded the matter "so that the trial court can fashion an appropriate remedy for the violation we have found." 680 F.2d at 943.

Plaintiffs have urged on remand a computation of money damages based on a combination of appraised values where available, and B & O's existing book values. Employing this method, the properties transferred from B & O to MAC have a minimum value of approximately $236,000,-000. All Class A debentures, if converted, would net 5.2% of all outstanding B & O common stock. The claims of all debenture holders would then have a minimum total of some $12,000,000 or $930 per debenture.

There are, however, serious deficiencies in the building blocks of this computation which makes it inappropriate as a measure of damages. Principal among them is the inadequacy of book values.

■ The subject properties were carried for decades with book values of uncertain age and origin. By 1977, the book values on these assets were hopelessly outdated. New uses, new circumstances, would affect the actual value of these properties. Some undeniably had a higher value than book. Others, according to testimony, had lower values. Because the book values are virtually useless and cannot provide a minimum value on unappraised properties, they are insufficient to support a damage award.

Plaintiffs' response is that book values are employed because the defendants have failed to make appraisals of the subject properties. While it is true that defendants have not conducted appraisals in many instances, defendants have no apparent legal obligation to do so. Though armed with a listing of MAC's properties, *plaintiffs* have made no effort to make appraisals in support of their claim for damages. Furthermore, by the nature of the properties involved, appraisals are speculative in that they are based on projections of distant future development.

Plaintiffs' computation of damages also fails to take into account the difference in value between a property owned by B & O and subject to ICC restrictions, and the same property owned by MAC and free to be developed. As long as B & O retained the non-rail assets, their value was severely limited. They could not be effectively developed because of ICC restrictions on use, issuance of securities, joint ventures and financing. Although plaintiffs contend that they have been deprived of a representative interest in valuable assets

stripped from B & O, those assets could not realize their value until the B & O relinquished them. This paradox is not accounted for in plaintiffs' damages computation, and indeed does not appear to be susceptible to resolution in damages.

We find one other significant flaw in plaintiffs' damages theory. The computation is based on the premise that plaintiffs' conversion right has been damaged to the extent that B & O's non-rail assets were removed and transferred to MAC. Therefore, plaintiffs' theory goes, the measure of damages is the proportional interest in MAC's assets represented by plaintiffs' conversion rights. In other words, debenture holders could have converted for 5.2% of B & O common stock, and received 5.2% of MAC stock, and therefore should be awarded 5.2% of MAC's assets.

The difficulty is that we cannot know whether plaintiffs would have taken MAC. Plaintiffs would have had to convert their debentures, relinquish their value and future interest, to obtain stock which in one case was delisted and in the other may have been unregistered. The damages theory is based on a valuation of a company which plaintiffs may well have decided against.

A more appropriate damages formula may have been to determine what portion of the fair market value of the debentures was attributable to the conversion option, and the extent to which that value was diminished by the removal of the non-rail assets. This would permit plaintiff to retain their debentures *and* obtain some measure of damages. It would appear that the value of the conversion right may have been negligible because B & O was no longer publicly traded and had not declared a dividend in 17 years. In any event, there is no evidence in the record to support any damage figure on such a theory.

We conclude therefore that there is no basis in the existing record for a damage award, either under plaintiffs' computation or any other theory. The inadequacy of both the book and fair market values in this case prevents any computation of damages which is other than speculation.

As Judge Knox noted:

We have no information as to the value of these assets which could form the basis of any decree. There is nothing to base an award on and without these figures we have no method of determining what damages, if any, have been sustained by the Plaintiffs.

Furthermore, because of the flaws described above, plaintiffs' damages theory is not justified under the unique circumstances of this case and does not fit the violation found. Our review of the record compels the same conclusion Judge Knox reached: plaintiffs have failed to prove damages.

## IV. MAC STOCK AS A REMEDY

Early in this litigation, as discussed above, defendants agreed to hold sufficient shares of B & O and MAC common stock to satisfy the claims of all debenture holders. Defendants now urge as an appropriate remedy the distribution of those shares to such debenture holders as choose to convert. Defendants argue that this rescissory remedy would place the plaintiffs in the same position they would have enjoyed in December 1977 absent the violations. With certain modifications, we believe this offers the most equitable and the only workable form of relief.

There is no question that this court possesses equitable power to fashion an appropriate remedy. *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2d Cir.1972). Clearly rescission is an appropriate remedy for a securities violation. *Glick v. Campagna,* 613 F.2d 31 (3d Cir.1979). Furthermore, remedies may be tailored to fit the circumstances of the individual case and assure an equitable result. E.g., *Speed v. Transamerica Corp.,* 235 F.2d 369 (3d Cir.1956); *Arrington v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 651 F.2d 615 (9th Cir.1981).

The purpose of rescission is to place the injured party in the same position he would have held in the absence of the violation. E.g., *Glick*, 613 F.2d at 37. Care must be taken that plaintiff is not placed in a better position than he would have enjoyed, a situation amounting to punishment of the defendant. *Id.; Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38 (2d Cir.1978).

The unique factual circumstances of this case require a different approach to a remedy. As we have seen, typical computations of damages are inappropriate. A rescissory measure of *damages* is impossible because there is no purchase price to return. However, we can endeavor to restore to the plaintiffs the opportunity once denied them.

Because of the defendant's deceptive practice, plaintiffs were deprived of the opportunity to convert their debentures into B & O stock and participate in the MAC dividend. The debenture holders' interest was damaged to the extent that their conversion right no longer included the opportunity to obtain a representative share of the non-rail assets.

The corporate reorganization of B & O was not itself a deceptive practice. There is no violation in B & O's decision to transfer its non-rail assets to MAC. Liability here is premised solely on the failure to provide prior notice of the dividend as required by SEC Rule 10b–17, an omission intended to prevent conversion of the debentures prior to the MAC dividend. 680 F.2d at 941, 945. Presumably then, if the debenture holders had been accorded prior notice of the reorganization and the MAC dividend, and the opportunity to convert and participate in the dividend, there would have been no violation. The question now is whether we can restore that lost opportunity.

A somewhat analogous situation was present in *Speed v. Transamerica Corp.*, 235 F.2d 369 (3d Cir.1956). There plaintiffs, holders of Class A stock, were deprived of their opportunity to convert to Class B stock prior to liquidation. Because Class B enjoyed greater benefits in the liquidation, the court concluded that the proper remedy for the wrongful deprivation of the conversion right was to treat plaintiffs as if they had converted and owned Class B stock at liquidation. In the present case we are not certain whether conversion provides greater benefit to the plaintiffs, so we may leave the decision on conversion to them. *Speed* does indicate that this is a proper method to redress the wrongful deprivation of a conversion right.

The appropriate number of shares of B & O and MAC stock are still available to satisfy all debentures upon conversion. The debenture holders can be afforded a period of time to make a decision on conversion. Upon converting, the erstwhile debenture holder would receive the appropriate number of B & O shares, and the same proportion of MAC shares as if he had converted prior to declaration of the dividend of December 13, 1977. This conversion and retroactive participation in the dividend would permit debenture holders to retain their representative interest in both the rail and non-rail assets of the B & O. To this extent, plaintiffs would be in the same position they would have occupied in December, 1977 were it not for the violation.

Plaintiffs object to the remedy on various grounds. It is first argued that MAC is not what it used to be. Plaintiffs assert that Chessie no longer intends to use MAC as its developing arm for the former B & O non-rail assets. Plaintiffs also claim that MAC's assets have been depleted through sweetheart transactions with subsidiaries and affiliates.

The short answer to plaintiffs' assertions about MAC's altered character and assets is that we have no reliable evidentiary material to support them. Nor can we allow plaintiffs to conduct a fishing expedition through discovery to find support. Furthermore, clamor over dealings with subsidiaries and affiliates which may or may not be proper would embroil us in another large and separate lawsuit. While collateral here, these issues might best be ad-

dressed in a derivative suit. This does not appear to be the proper forum.

We do know something about MAC's operation since December 1977. Testimony in the non-jury trial held in the summer of 1979 revealed that MAC had retained its value to that point because it retained either the same assets transferred to it from B & O or the proceeds from the sale of such assets with an accounting of each transaction. Judge Knox made a specific finding of fact to this effect. 509 F.Supp. 1008. We also know now that in recent years both MAC and B & O have paid cash dividends. The facts available to us contradict plaintiffs' allegations.

Plaintiffs also contend that rescission of the type described would be improper because they are unable to make an informed decision on conversion, particularly without further discovery. Our views on this topic have been presented above in our discussion of the need for discovery and are applicable here as well. Plaintiffs have a wealth of knowledge today that they would not have had and would not have been entitled to in 1977. Much of this information is confidential. Plaintiffs have had the advantage of viewing MAC and B & O in operation for 6 years, certainly more valuable and more reliable information than any representations as to MAC's future made in 1977. Although we agree that plaintiffs do not enjoy all the information one might wish for, they do possess sufficient data to enable them to make a reasoned judgment on conversion.

Plaintiffs also object because MAC stock is not registered with the SEC and is therefore not transferable. Defendants originally sought to avoid registration so as to also avoid the expense and delay of appraisals and compilation of a registration statement. Defendants still seek to avoid registration and they urge this court to hold a hearing under Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(10), to approve distribution of MAC shares to converting debenture holders without registration.

We note first that hearings under Section 3(a)(10) have been previously employed in settlement situations, that is, where someone voluntarily accepted unregistered securities. E.g., *Securities and Exchange Commission v. Blinder Robinson & Co., Inc.,* 511 F.Supp. 799 (D.Colo.1981); *Brucker v. Thyssen-Bornemisza Europa N.V.,* 424 F.Supp. 679 (S.D.N.Y.1976), *aff'd* 559 F.2d 1202 (2d Cir.1977). We hesitate to force unregistered securities on an unwilling plaintiff.

Secondly, the grant of an exemption from registration would deprive converting debenture holders of a benefit they would likely have received in 1977. During the planning stages of reorganization, the B & O recognized that an increase in the number of B & O shareholders would probably prevent the acquisition of a no-action letter from the SEC and require registration. While defendants made efforts to prevent conversions to B & O common stock, including the action giving rise to liability here, the December 13, 1977 resolution authorized preparation of a registration statement for MAC if the no-action letter was to be denied. Should sufficient numbers of debenture holders now choose to convert to B & O stock in order to participate in the MAC dividend we could not impose unregistered securities on them today, when they would have received registered securities in 1977.

By the same token however, defendants need not register MAC until after the debenture holders have made their decision on conversion. Once the conversion period expires, defendants are free to again seek a no-action letter or file a registration statement, dependent on their judgment of the situation, just as would have occurred in 1977 following conversion. If defendants choose not to seek a no-action letter, or if one is denied, defendants must proceed with registration.

Should the plaintiffs convert they would be entitled to consequential damages. Plaintiffs would be due all dividends paid on B & O and MAC common stock since December 13, 1977. However, in order to

return the parties to their appropriate 1977 positions, plaintiffs would be required to return interest received on the debentures in the interim. If but for the violation plaintiffs would have converted in 1977, they would have enjoyed the fruits of the stock ownership but foregone the benefits of the debentures. To effect rescission, this must be duplicated to the extent possible.

## V. SCOPE OF REMEDY

Defendants previously agreed to extend any remedy obtained in this suit to other similarly situated debenture holders. There was some discussion and apparent confusion on appeal as to the make-up of this "class". We endeavor to define it.

The remedy ordered here is limited to those persons who owned the subject debentures at the time of the violation, December 13, 1977, and who still own those debentures. Those persons who owned debentures on December 13, 1977 and subsequently converted to B & O common stock may also elect to participate in this remedy, obtaining MAC and its dividends, offset by interest accruing on the debentures after December 13, 1977. Those persons who acquired B & O debentures after December 13, 1977 are within the class of *Lowry* plaintiffs, and their claims will be resolved in that litigation. Those persons who owned B & O debentures on December 13, 1977 and subsequently sold their debentures are not within the scope of either this action or *Lowry*.

## VI. CONCLUSION

As stated above, we see no need to reopen the record in this case and plaintiffs' motion for additional discovery will therefore be denied. Furthermore, we conclude that the existing record does not provide a sufficient basis for calculation of damages, and plaintiffs' theory of damages does not fit the violation.

We conclude that rescission is the appropriate remedy here. It is the only remedy adaptable to the unique circumstances of this case and the one which most closely

redresses the precise violation found by the Court of Appeals.

It will therefore be ordered that plaintiffs have until September 1, 1984, to choose to convert their debentures to B & O common stock. Plaintiffs shall then participate in the dividend in MAC stock on the same basis as shareholders of record on December 13, 1977.

Defendants request for a hearing under 15 U.S.C. § 77c(a)(10) is denied. After plaintiffs have had opportunity to convert, defendants shall proceed to register the MAC stock unless they are able to obtain a no-action letter from the SEC.

By stipulation, defendants have agreed to extend the award in this suit to all debenture holders similarly situated. This remedy will be extended to all persons within the "class" described above. Defendants shall give notice of this opinion and order to the members of that class on or before July 1, 1984.

An appropriate order will issue.