824 F.2d 249
 Fed. Sec. L. Rep. P 93,407, 8 Fed.R.Serv.3d 775
 PITTSBURGH TERMINAL CORPORATION
v.
The BALTIMORE AND OHIO RAILROAD COMPANY, W. James Price,
Alonzo G. Decker, Jr., James Parker Nolan, Frederick Deane,
Jr., James L. O'Keefe, Gregory S. Devine, Fay A. Le Fevre,
Nicholas T. Camicia, Dr. Milton S. Eisenhower, Steven
Muller, John K. Stevenson, Hays T. Watkins, Howard E.
Simpson, and Cyrus S. Eaton, All directors or former
directors of The Baltimore and Ohio Railroad, The Chesapeake
and Ohio Railroad and/or The Chessie System, the Chesapeake
and Ohio Railroad and the Chessie System, Inc.
Monroe GUTTMANN, Loretta Guttmann, Janet Rees, and Evelyn Bittner
v.
The BALTIMORE AND OHIO RAILROAD COMPANY, W. James Price,
Alonzo G. Decker, Jr., James Parker Nolan, Frederick Deane,
Jr., James L. O'Keefe, Gregory S. Devine, Fay A. Le Fevre,
Nicholas T. Camicia, Dr. Milton S. Eisenhower, Steven
Muller, John K. Stevenson, Hays T. Watkins, Howard E.
Simpson, and Cyrus S. Eaton, All directors or former
directors of The Baltimore and Ohio Railroad, The Chesapeake
and Ohio Railroad and/or The Chessie System, the Chesapeake
and Ohio Railroad and the Chessie System, Inc.
Appeal of PITTSBURGH TERMINAL CORPORATION, Monroe Guttmann,
Loretta Guttmann, Janet Rees, and Evelyn Bittner,
Appellants in No. 86-3540.
Appeal of Matthew E. HARLIB, Appellant in No. 86-3542.
 Nos. 86-3540, 86-3542.
 United States Court of Appeals,
Third Circuit.
 Argued March 18, 1987.
Decided July 22, 1987.
 
 Michael P. Malakoff (argued), Ellen M. Doyle, Berger Kapetan Malakoff & Meyers, P.C., Pittsburgh, Pa., for appellants.
 Richard T. Wentley (argued), Anthony J. Basinski, Joseph W. Klein, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellees.
 Before HIGGINBOTHAM, MANSMANN, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 These consolidated appeals challenge the court to untangle two strands of a complex web of litigation arising out of a 1977 securities laws violation by the Baltimore & Ohio Railroad Company (B & O). At the center of both appeals is the question of the scope of the remedy granted by the district court to the appellants in No. 86-3540 in a May 1984 order: specifically, whether or not persons in the position of Matthew E. Harlib, the appellant in No. 86-3542, are entitled to share in that relief. Because we agree with the appellants that Harlib and others in his position are within the scope of the relief and that therefore the district court erroneously denied the motion requesting the district court to prohibit B & O from limiting relief to those debenture holders who still held a security interest in B & O, we vacate the order appealed from in No. 86-3540 and dismiss the appeal in No. 86-3542 as moot in light of our disposition of the former appeal.
 
 I.
 
 2
 The appellants in both appeals were holders as of December 13, 1977, of debentures issued by B & O. The debentures were listed and traded on the New York Stock Exchange and were convertible to B & O common stock at any time before maturing. In December 1977, the Chesapeake & Ohio Railroad Company (C & O), a wholly owned subsidiary of the Chessie System, Inc., a holding company, owned 99.63% of B & O's common stock.
 
 
 3
 B & O common stock had been listed and traded on the New York Stock Exchange until 1964 when C & O had acquired more than 99% of the stock. Thirteen individuals still held some stock. No dividends were declared after 1960.
 
 
 4
 In 1977, B & O owned many rail and non-rail assets. To avoid Interstate Commerce Commission regulations hindering development of nonrail assets, B & O reorganized, transferring its considerable nonrail assets to a wholly owned subsidiary, Mid-Allegheny Corporation (MAC), and distributing MAC common stock to B & O common shareholders share for share.
 
 
 5
 B & O wished to avoid the delay and not inconsiderable expense of appraisals of the transferred assets (including large amounts of real estate) required for registration of the MAC stock with the Securities Exchange Commission (SEC). B & O therefore sought a no-action letter from the SEC. As there were so few B & O shareholders, B & O was likely to get the letter, but this likelihood would be jeopardized if all debenture holders received notice of the proposed distribution of MAC stock and converted to common stock.
 
 
 6
 On December 13, 1977, B & O transferred selected assets to MAC and declared the dividend of MAC stock to all B & O shareholders as of that date. B & O, however, gave no prior notice of the dividend, thus depriving the debenture holders, including the appellants, of the opportunity to convert to B & O common stock before the record date and participate in the dividend. B & O thereby kept the number of shareholders low and avoided registration of the MAC stock.
 
 
 7
 Some holders of the convertible debentures on December 13, 1977, the appellants in No. 86-3540 ("the PTC/Guttmann plaintiffs") brought actions (later consolidated) against B & O for violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and state securities laws. Harlib, appellant in No. 86-3542, owned ten debentures on December 13, 1977, but converted them to 100 shares of B & O common stock on January 2, 1979, which he sold on March 23, 1985.
 
 
 8
 The PTC/Guttmann -plaintiffs moved for certification as a class. The district court denied the motion, based at least in part on B & O's stipulation to treat all similarly situated debenture holders in the same manner as the plaintiffs. The stipulation, set down in the May 2, 1980, affidavit of Robert F. Hochwarth, a general attorney for Chessie System, memorialized a November 1978 agreement between B & O and the Chase Manhattan Bank, N.A., the trustee for the indenture under which the debentures had been issued. The stipulation in pertinent part stated that
 
 
 9
 should the plaintiffs in the Pittsburgh Terminal and Guttmann actions prevail on the merits of their claims at trial or should a settlement of these claims be reached before trial, all holders of debentures as of December 13, 1977, whether or not they were subsequently converted, will be permitted to participate in the court judgment or settlement on the same terms as the plaintiffs.
 
 
 10
 The district court granted summary judgment for B & O Pittsburgh Terminal Corp. v. Baltimore & Ohio R.R., 509 F.Supp. 1002 (W.D.Pa.1981). This court reversed[1] and remanded for the fashioning of an appropriate remedy for the violation it found. 680 F.2d 933 (3d Cir.), cert. denied, 459 U.S. 1056, 103 S.Ct. 475, 74 L.Ed.2d 621 (1982).
 
 
 11
 On remand, the district court accordingly granted the PTC/Guttmann plaintiffs the opportunity to convert their debentures and receive the MAC dividend as well as dividend income on the B & O and MAC shares since December 13, 1977, less interest received on the debentures. 586 F.Supp. 1297 (W.D.Pa.1984). In stating the scope of the remedy, the district court said:
 
 
 12
 Defendants previously agreed to extend any remedy obtained in this suit to other similarly situated debenture holders. There was some discussion and apparent confusion on appeal as to the make-up of this "class." We endeavor to define it.
 
 
 13
 The remedy ordered here is limited to those persons who owned the subject debentures at the time of the violation, December 13, 1977, and who still own those debentures. Those persons who owned debentures on December 13, 1977 and subsequently converted to B & O common stock may also elect to participate in this remedy, obtaining MAC and its dividends, offset by interest accruing on the debentures after December 13, 1977. Those persons who acquired B & O debentures after December 13, 1977 are within the class of Lowry plaintiffs, and their claims will be resolved in that litigation. Those persons who owned B & O debentures on December 13, 1977 and subsequently sold their debentures are not within the scope of either this action or Lowry.
 
 
 14
 Id. at 1305. We affirmed by memorandum opinion. 760 F.2d 257 (3d Cir.), cert. denied, 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed.2d 256 (1985).[2]
 
 
 15
 On June 2, 1986, B & O filed for the first time a registration statement for the MAC stock. The prospectus included the following statement of eligibility:
 
 
 16
 During the litigation, the B & O and the Indenture Trustee of the B & O Debentures, Chase Manhattan Bank, agreed that all holders of the B & O Debentures who held them on December 13, 1977, and still hold them or who own B & O stock as a result of having converted them into B & O stock would be afforded the same treatment as the successful litigants ("Stipulation"). Therefore, even though the litigation was not a class action as that term is commonly used, those eligible under the Stipulation may obtain the same treatment as the litigants if they meet the eligibility requirements set forth below and elect to participate.
 
 Eligibility
 
 17
 Those eligible to participate in the distribution are (1) the successful litigants in the cited civil actions who meet the requirement of the District Court's order and who elect to participate and (2) those holders of B & O Debentures who: a) owned the B & O Debenture on December 13, 1977, and b)(i) still own the B & O Debenture or (ii) have subsequent to December 13, 1977, converted the B & O Debenture for B & O common stock which they still hold, and c) elect to participate and so take advantage of the Stipulation....
 
 
 18
 (emphasis added).
 
 
 19
 On June 13, 1986, the PTC/Guttmann plaintiffs filed a "Motion to Enforce [the] Court's Judgment Order." In that motion, the plaintiffs asserted that the registration statement's "eligibility requirement" (2)(b)(ii) constituted a "unilateral alteration of the scope of the persons entitled to relief under [the district court's] May 8, 1984, Order as amended ... taken without notice to the Plaintiffs or approval by the Court," which had the effect of impermissibly excluding persons like Harlib, who had held debentures on December 13, 1977, subsequently converted them to B & O common stock, and then sold the stock. The PTC/Guttmann plaintiffs therefore requested the district court to prohibit B & O from limiting the scope of relief in this way. B & O responded by arguing that these plaintiffs, who (unlike Harlib) had not converted and sold their stock had no standing to raise the issue of scope, and that in any case the motion amounted to a new claim which was barred under the doctrines of res judicata[3] and law of the case by the district court's previous judgment. Finally, B & O contended that the stipulation should be construed as excluding persons who had converted and then sold the stock.
 
 
 20
 On July 28, 1986, Harlib moved to intervene in Guttmann. His motion did not specify whether it was for intervention as of right under Fed.R.Civ.P. 24(a)(2) or for permissive intervention under Rule 24(b) and in light of our disposition of his appeal we do not reach the issue.
 
 
 21
 The district court denied both motions on August 7, 1986, Harlib's without comment. No. 79-94 (W.D.Pa. Aug. 7, 1986). The court stated that it denied the PTC/Guttmann plaintiffs' motion because it agreed with B & O that "the stipulation was not intended to include any person who did not hold a present security interest in B & O." Nos. 77-1455, 79-94, 84-1135 (W.D.Pa. Aug. 7, 1986).
 
 
 22
 Both Harlib and the PTC/Guttmann plaintiffs appeal these orders, and the appeals have been consolidated. Harlib has also filed a separate class action against B & O on behalf of himself and others in his position.
 
 II.
 No. 86-3540
 
 23
 B & O first argues that the PTC/Guttmann plaintiffs' motion to enforce the judgment, irrespective of its caption, was in substance a motion to amend the judgment under Federal Rule of Civil procedure 59(e) and should therefore be treated as such. See Sea Ranch Ass'n v. California Coastal Zone Conservation Comm'ns, 537 F.2d 1058, 1061 (9th Cir.1976); 7 J. Moore, Federal Practice p 60.29 at 60-32 n. 4 (2d ed. 1985). Rule 59(e) motions must be filed within ten days of entry of judgment, and as this time limitation is a jurisdictional requirement, the court may not grant an extension or waive the requirement. See Sutliff, Inc. v. Donovan Cos., 727 F.2d 648, 652 (7th Cir.1984).
 
 
 24
 The district court's order which the PTC/Guttmann plaintiffs moved to enforce was entered on May 8, 1984; their motion was filed on June 13, 1986. Therefore, if Rule 59(e) applies to this motion, it was untimely and the district court lacked jurisdiction to consider it.
 
 
 25
 We reject the contention, however, that this is a Rule 59(e) motion. The district court did not so consider it, nor did it deny the motion based on untimeliness. B & O relies for its contention upon cases in which motions denominated as motions for "clarification" or "reconsideration" were construed as Rule 59(e) motions. See, e.g., Sea Ranch, supra. In contrast, we note that federal courts of appeals, including this one, have exercised jurisdiction over appeals from denials of motions for enforcement of judgment. See, e.g., Sansom Committee by Cook v. Lynn, 735 F.2d 1535, 1538, 1540 & n. 8 (3d Cir.), cert. denied, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984).[4] Such a motion is not an appendage to clarify or reconsider the original judgment but a matter having independent significance because it relates to a development occurring after the entry of the original judgment. It is not a device to relitigate the original issue. Courts therefore have not applied a ten-day time limit to these motions, and we decline to do so now.
 
 
 26
 We similarly reject B & O's contentions that the doctrine of the law of the case barred the district court's consideration of the scope of the stipulation and of the May 8, 1984, judgment. The May 8 order purportedly defined the scope of the relief to be granted, and this court affirmed by memorandum on February 25, 1985. Although the issue of the rights of those debenture owners who converted and then sold the stock (stock-sellers) was not explicitly addressed, it was, B & O argues, decided by necessary implication of the district court's exclusion of those who sold their debentures without converting (debenture-sellers), and is thus within the doctrine of the law of the case, under our decision in Schultz v. Onan Corp., 737 F.2d 339 (3d Cir.1984).
 
 
 27
 We disagree. The district court does appear to have intended to define the scope of the remedy completely, and although the inference drawn by B & O is not unreasonable, it does not appear to be "necessary" under Schultz. The district court's own August 7, 1986, interpretation of its earlier opinion as extending to stock-sellers as well as debenture-sellers is not controlling; application of the law of the case doctrine depends upon the meaning of this court's affirmance. In its unpublished memorandum opinion, the earlier panel of this court did not address stock-sellers, either, and in fact noted that its affirmance of the exclusion of debenture-sellers from the remedy was based only on "the contractual question" of the interpretation of the stipulation, and did not reach the question whether those persons had a cause of action against B & O. Moreover, the district court's order of August 7, 1986, based its denial of the motion not on the law of the case doctrine, but on the construction of the stipulation, stating: "Since we agree with defendants that the stipulation was not intended to include any person who did not hold a present security interest in B & O, we will DENY plaintiffs' motion."
 
 
 28
 Although B & O has not raised the issue of standing in its briefs or argument in this appeal, a word on that question is in order here. In its response to the PTC/Guttmann plaintiffs' motion to enforce the judgment order, B & O asserted that the "plaintiffs' counsel is clearly without standing" to argue inclusion of stock-sellers. In their reply, the PTC/Guttmann plaintiffs noted that they and their counsel did indeed represent stock-sellers and had done so at all times, this having been the basis for the denial of class certification. In denying the plaintiffs' motion to enforce, the district court did not address the standing question, but proceeded directly to the merits of the motion. This court may therefore assume that the district court was satisfied that the PTC/Guttmann plaintiffs did have standing to make the motion, a decision from which B & O has not appealed.
 
 
 29
 In any case, we would be inclined to reject a lack of standing defense in the present case. The district court, at B & O's urging, based its denial of class certification at least in part upon its decision that the plaintiffs did represent the interests of others who had held debentures on December 13, 1977. B & O may not now fairly state that the PTC/Guttmann plaintiffs lack standing to bring this motion because they do not represent those interests. The question is only whether stock-sellers are within the group whose interests the PTC/Guttmann plaintiffs represented, the very question that is the substance of this appeal. Our analysis of the merits, therefore, also lays to rest any question of standing.
 
 
 30
 Having thus found no bar to consideration of the merits, we turn to the construction of the stipulation and the district court's order of May 8, 1984. B & O argues that the district court's August 1986 order did not reinterpret B & O's stipulation, but only construed the court's own May 8, 1984, order, adding nothing new to its previous interpretation of the stipulation. Therefore, asserts B & O, the plaintiffs' motion really related to the 1984 order and thus the district court's denial of their motion is entitled to particularly deferential review. We reject this argument; as we have noted above, the August 1986 order explicitly states that it was interpreting the stipulation, not its May 1984 order.
 
 
 31
 On this basis our decision in In re Fine Paper, 695 F.2d 494 (3d Cir.1982), upon which B & O relies, is inapposite. In Fine Paper, this court, in reviewing a district court's interpretation of its own order certifying a class, stated: "We must give particular deference to the district court's interpretation of its own order." Id. at 498. There is no basis for extending this principle to demand similar deference in the present case to the district court's interpretation of a stipulation underlying a previous order, but not of the order itself.[5]
 
 
 32
 In our previous memorandum opinion in this case, we stated that the stipulation was to be interpreted according to the general principles of contract construction. B & O therefore urges application to the stipulation of the maxim expressio unius est exclusio alterius, contending that it compels the conclusion that stock-sellers were to be excluded. Pointing to the stipulation's reference only to "all holders of debentures as of December 13, 1977, whether or not they subsequently converted," B & O argues that the reference to debenture holders who have converted must, of necessity, have excluded all other categories of persons, including the stock-sellers. Had that group been intended to be included, says B & O, the stipulation should have contained an additional clause: "... whether or not they subsequently sell the B & O common stock." The absence of such a clause is, B & O claims, fatal to the plaintiffs' argument. This strained construction is plainly wrong. It could as easily be argued that had the stipulation intended to exclude stock-sellers, it should have included this additional clause: "... unless they subsequently sell their B & O common stock," and that the absence of that clause is fatal to B & O's position. As the rules of contract construction that B & O urges require a document to be construed against its drafter, they support the latter argument.
 
 
 33
 Moreover, B & O's premise is flawed: debenture holders who converted and then sold their stock are a subcategory of the specifically included group, debenture holders who converted to stock, not a separate category at all. The stipulation itself and the May 1984 order required only that debenture holders convert to stock and notify B & O of their intent to participate in the remedy, without any suggestion that a subsequent sale would bar participation. The plain language of the stipulation, as well as of the district court's May 1984 judgment, states that "all " debenture holders as of December 13, 1977, who convert are entitled to share in the remedy. The district court has already ruled, however, and this court has affirmed, that "all" debenture holders as of December 13, 1977, did not include those who subsequently sold their debentures without converting them. The plaintiffs agree that the law of the case doctrine does bar reconsideration of that decision.
 
 
 34
 The Scope of Remedy section of the May 8, 1984, order stated:
 
 
 35
 The remedy ordered here is limited to those persons who owned the subject debentures at the time of the violation, December 13, 1977, and who still own those debentures. Those persons who owned debentures on December 13, 1977, and subsequently converted to B & O common stock may also elect to participate in this remedy.... Those persons who owned B & O debentures on December 13, 1977, and subsequently sold their debentures are not within the scope of ... this action....
 
 
 36
 586 F.Supp. at 1305. The stock sellers do come within the literal terms of the second sentence. So do debenture sellers; they, however, are excepted by the final sentence. It would seem that the application of the expressio unius maxim espoused by B & O in this case supports the plaintiffs: the opinion specifically excludes debenture sellers (which would be unnecessary unless they otherwise would be included), but does not so exclude stock-sellers.
 
 
 37
 There is a substantive basis as well for distinguishing stock-sellers from debenture-sellers. The debenture-sellers were excluded because the district court, attempting to place wronged debenture owners in status quo ante but no more, was concerned about how it could tell whether those who sold their debentures would have chosen to convert, as required to participate in the remedy. 586 F.Supp. at 1301, 1303, 1304-05. The stock-sellers, by contrast, did choose to convert their debentures; thus speculation is unnecessary as to whether they would convert and the extent of the conversions.
 
 
 38
 The stock-sellers were injured by B & O's section 10(b) violation as much as were debenture converters who did not subsequently sell their B & O common stock. Although B & O argues that there has been no holding specifically to this effect, it appears that B & O is barred from arguing otherwise by the finding of its Sec. 10(b) violation of which all holders of the debentures as of December 13, 1977, were victims. See 680 F.2d at 943. Furthermore, as the basis for denial of class certification was B & O's stipulation that relief would be extended to all others similarly situated, B & O may not now contend, based on that very stipulation, that these debenture owners were not represented in this action. Nor has B & O alleged any interest, beyond its duty to extend the remedy in this case, in whether its debenture holders who converted held the common stock or sold it. There is not a plausible reason why an eligible debenture holder who converted to common stock should be compelled to hold the stock almost ten years in order to participate in the remedy for the violation.
 
 
 39
 Finally, the denial of the plaintiffs' motion creates a windfall for B & O allowing it to keep stock and dividends that rightfully belong to those injured by its section 10(b) violation. Where there is a possibility that one or the other party in a securities action will receive a windfall, the victim is favored over the violator. See, e.g., Rochez Bros. v. Rhoads, 491 F.2d 402, 415 (3d Cir.1974) (quoting Janigan v. Taylor, 344 F.2d 781, 786 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965)); see also Randall v. Loftsgaarden, --- U.S. ----, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986); Ute Citizens v. United States, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741 (1972). B & O responds that just as this court noted in its memorandum opinion that it made no ruling on whether debenture-sellers had a cause of action outside the stipulation, there was no such ruling with respect to stock-sellers either, or on what the appropriate measure of damages would be. Again, B & O seems to be relying on its own stipulation, the inclusiveness of which supported denial of class certification, as a basis now for exclusion, and we reject the inference that our memorandum opinion intended to equate stock-sellers with debenture-sellers.
 
 
 40
 In sum, we hold that under the terms of B & O's stipulation, the district court's order of May 8, 1984, and this court's affirmance of October 22, 1985, persons who held the B & O debentures on December 13, 1977, and who subsequently converted them to B & O common stock, and then sold the stock, are entitled to participate in the relief granted in the district court's order of May 8, 1984. The district court's order of August 7, 1986, denying the PTC/Guttmann plaintiffs' motion to enforce the May 8, 1984, judgment will therefore be vacated.
 
 III.
 No. 86-3542
 
 41
 Harlib's motion to intervene followed and responded to B & O's response to the PTC/Guttmann plaintiffs' motion to enforce the court's judgment. In that motion, Harlib stated that he sought to intervene because his interests "may not be adequately represented by the Guttmann Plaintiffs depending on [the district court's] decision with respect to the Guttmann Plaintiffs' 'Motion to Enforce Court's Judgment Order.' " He further noted that his claims "are identical to the claims of the Guttmann plaintiffs, and arise out of the identical set of facts."[6]
 
 
 42
 In light of our disposition of the PTC/Guttmann plaintiffs' appeal, there is no longer any need for Harlib to intervene in their action against B & O. The disputes in which he seeks to protect his interests have been resolved in his favor. His appeal from the district court's order denying his motion to intervene is therefore moot.
 
 IV.
 
 43
 Accordingly, the order of the district court dated August 7, 1986, denying the PTC/Guttmann plaintiffs' motion to enforce the district court's order of May 8, 1984, will be vacated and the matter remanded to the district court with instructions to take necessary measures to enforce its earlier order so as to include within the scope of relief persons who held the debentures on December 13, 1977, converted them to B & O common stock, and subsequently sold the stock. The appeal from the district court's order of August 7, 1977, denying Harlib's motion to intervene, will be dismissed as moot.
 
 
 44
 Costs in both appeals taxed against the appellees.
 
 
 
 [1]
 The court, however, affirmed the district court's judgment in favor of one of the defendants, Milton S. Eisenhower, who is not a party in the present action. 680 F.2d at 939 n. 6, 943
 
 
 [2]
 Those persons who purchased the debentures, not having held debentures as of December 13, 1977, were later held to be excluded from the eventual PTC/Guttmann remedy. Lowry v. Baltimore & Ohio R.R., 707 F.2d 721 (3d Cir.) (per curiam), reh'g denied, 711 F.2d 1207, cert. denied, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983), on remand, 629 F.Supp. 532 (1986)
 
 
 [3]
 B & O has not argued the applicability of the doctrine of res judicata in this appeal
 
 
 [4]
 Cases in which other circuits have exercised jurisdiction over appeals from denials of motions for enforcement of judgment are: United States ex rel. Miller v. McGinnis, 774 F.2d 819, 822 (7th Cir.1985); Stockton v. United States, 493 F.2d 1021 (9th Cir.1974); cf. United States v. Solomon, 437 F.2d 110, 110 (5th Cir.1971) (motion to enforce IRS summons)
 
 
 [5]
 Fine Paper is further distinguishable because it was a class action and because it involved distribution of a single fund
 
 
 [6]
 The motion also stated that Harlib, not having been a party in the original action, was not bound by the district court's denial of the plaintiffs' claim of prejudgment interest, which was based on the plaintiffs' having refused an offer of judgment. Therefore, Harlib claimed an interest in prejudgment interest which could not be represented by the PTC/Guttmann plaintiffs
 At oral argument on appeal, however, counsel for Harlib stated that his client was willing to drop the prejudgment interest claim. This leaves his interests identical to those of the PTC/Guttmann plaintiffs. Moreover, as Harlib seeks only "to participate in the relief awarded ... to the Guttmann plaintiffs," and that relief did not include prejudgment interest, (a holding which has been challenged in a separate proceeding, since settled), there seems to be no basis at this point upon which to consider a claim for prejudgment interest. We would be disinclined in any event to reverse the district court's denial of a motion to intervene made more than two years after judgment if the sole remaining issue were prejudgment interest; the postjudgment developments are irrelevant to that question.