Sanford E. **LOCKSPEISER**, Cincinnati, Ohio, suing on behalf of himself and all other shareholders of Western Maryland Company similarly situated, Appellants,

v.

**WESTERN MARYLAND COMPANY and CSX Corporation and CSX Minerals, Inc., Appellees.**

No. 84-1874.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1985.

Decided July 15, 1985.

Richard S. Wayne, Cincinnati, Ohio (Gene Mesh, Mark Huller, Jean E. Bendon, Gene Mesh Co., L.P.A., Cincinnati, Ohio, Herbert E. Milstein, Steven J. Toll, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., William Sammons, Tydings & Rosenberg, Baltimore, Md., on brief), for appellant.

K. Dennis Sisk, Richmond, Va. (James E. Farnham, Hunton & Williams, Richmond, Va., C. Keith Meiser, Baltimore, Md., on brief), for appellees.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Sanford E. Lockspeiser, a Western Maryland Company shareholder, appeals the judgment of the district court dismissing his class action against Western Maryland, CSX Corporation, and CSX Minerals, Inc., pursuant to Fed.R.Civ.P. 12(b). Lockspeiser alleged violations of the Securities Exchange Act arising from Western Maryland's merger into CSX Minerals, a wholly-owned CSX subsidiary. He also alleged breach of state law fiduciary duties. The district court found that Lockspeiser failed as a matter of law to allege material omissions under Sections 10(b) [15 U.S.C. § 78j(b)] and 14(a) [15 U.S.C. § 78n(a)] of the Exchange Act and accompanying regulations. It dismissed the federal securities claims and declined to exercise pendent jurisdiction over the remaining state claim. Finding that Lockspeiser has stated federal securities claims, we vacate the judgment of the district court.

## I

Before the merger, CSX and its subsidiaries owned 93% of Western Maryland, a timbering and mineral leasing concern. The notice of a shareholder meeting to consider the merger included the Western Maryland Board of Directors' approval of the merger plan, which provided for shareholders to receive $33 in cash or equivalent CSX stock for each Western Maryland share. The notice stated that CSX subsidiaries held sufficient Western Maryland stock to approve the merger, "therefore [Western Maryland] expects the Plan of Merger to be approved and adopted."

A proxy statement accompanying the notice included Western Maryland's 1982 annual report. Proxy material disclosed the company's holdings, in terms of acreage, of minerals and timber. It also disclosed income attributable to mineral and timber royalties, real property values as carried on the company's books, and a book value of $17.04 per share. It included market quotes for Western Maryland stock, although there was not an established market for the stock, and the opinion of the First Boston Corporation, an investment banker, that the merger was fair to shareholders other than CSX Minerals. First Boston did not undertake an independent evaluation of Western Maryland's physical assets.

One week before the merger, Lockspeiser filed a complaint seeking a permanent injunction against violations of Sections 10(b) and 14(a) of the Exchange Act and state law, rescission of the merger should it occur, and damages. He also sought to make CSX liable as a controlling person under Section 20(a) of the Exchange Act. He alleged misleading or omitted material facts in the proxy statement, including: omission of tonnage estimates of Western Maryland's coal reserves, its most valuable asset; omission of the company's timber holdings in board feet; and disclosure of the company's book value per share rather than actual asset value. Although the proxy statement estimated in acres Western Maryland's coal and timber holdings, Lockspeiser claimed these figures were misleading. Lockspeiser also cited the failure of the proxy statement to disclose "the

true purpose of the merger which is to obtain the assets of [Western Maryland] for the benefit of CSX at the expense of the minority shareholders of [Western Maryland]." The defendants moved to dismiss under Fed.R.Civ.P. 12(b), claiming in part that the alleged omissions were not material as a matter of law.

Several months after the merger, Lockspeiser amended his complaint to allege, among other things, failure to disclose "that another of the principal purposes of the merger is to avoid paying substantial cash dividends to the minority shareholders of [Western Maryland]." The court granted the defendants' renewed motion to dismiss, holding "that the omissions alleged were not, as a matter of law, material and that the essence of the dispute between the parties is the alleged inadequacy of the price paid for each share of stock and the alleged breach of fiduciary duty."

Although the court dismissed the Exchange Act claims, it allowed amendment of the pendent state claim to establish diversity jurisdiction. Lockspeiser instead sought to amend his Exchange Act claims to allege that the proxy statement failed to disclose that First Boston's fairness opinion rested on an evaluation of only a fraction of Western Maryland's coal and timber reserves. Lockspeiser also sought reconsideration of the district court's first order dismissing his federal claims.

The district court refused to reconsider its first order. Finding that the second amended complaint was substantially similar to the first and suffered the same defects, the court entered judgment for the appellees.

## II

Stripped of verbiage, the core of Lockspeiser's federal complaint is the proxy's omission of "the number of tons of coal reserves" and "the amount of standing board feet of timber," the two most valuable assets owned by Western Maryland. The allegations pertaining to these omissions distinguish this case from *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), on which the appellees rely. In *Santa Fe*, a minority shareholder in a merged company contended that the grossly inadequate price offered to him for his stock was part of an artifice to defraud under Rule 10b–5.* The Court held that Section 10(b) and the Rule did not apply, noting that "minority shareholders could either accept the price offered or reject it and seek an appraisal.... Their choice was fairly presented, and they were furnished with all relevant information on which to base their decision." 430 U.S. at 474, 97 S.Ct. at 1301. This is because "once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." 430 U.S. at 478, 97 S.Ct. at 1303.

Unlike the minority shareholder in *Santa Fe*, Lockspeiser is not basing his cause of action on inadequacy of price. His complaint is the absence of full and fair disclosure and a lack of relevant information about the company's coal and timber reserves. In contrast, *Santa Fe* emphasized that the minority shareholders were furnished all relevant information on which to base a decision to accept the offer or seek an appraisal.

Also, we cannot accept the appellees' argument that disclosure of tonnage and board feet estimates would violate the federal securities laws. The cases on which the appellees primarily rely do not support their argument. *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir.1980), notes that disclosure of financial projec-

---

* Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance" in contravention of SEC rules and regulations. 15 U.S.C. § 78j(b). Rule 10b–5 in part states:

It shall be unlawful ...

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...
17 C.F.R. § 240.10b–5.

tions is not required. In *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 265 (3d Cir.1972), the court observed that the Securities Exchange Commission and the courts discourage disclosure of asset valuations in proxies. The Third Circuit, however, modified *Kohn's* view of asset valuations and held that in an appropriate case they should be disclosed. *See Flynn v. Bass Brothers Enterprises, Inc.*, 744 F.2d 978, 984–88 (3d Cir.1984).

Lockspeiser bases his cause of action on the omission of facts about coal and timber reserves, not financial projections or valuations. He claims the company possessed this information and that it was essential for a rational decision whether to accept the offer or seek an appraisal under state law. Lockspeiser assigns significance to the disclosure of Western Maryland's land acreage. Lockspeiser contends this disclosure was misleading because it did not reflect the coal and timber reserves.

■ We conclude that Lockspeiser has alleged more than simply an inadequate price for his stock or the omission of speculative estimates of value. He has alleged the omission of facts about the coal and timber reserves. Although the omitted information has some bearing on the value of the stock, it is not for this reason immune from scrutiny under the Act and the Rule. *See Atchley v. Qonaar Corp.*, 704 F.2d 355, 357–59 (7th Cir.1983). The critical question, therefore, is whether the omissions are material.

### III

The test for determining the materiality of an omission from a proxy statement is set forth in *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976):

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard

does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.

The American Law Institute's Federal Securities Code § 202(92)(A) adopts a substantially similar definition of materiality.

■ The Western Maryland minority shareholders were confronted with the choice between accepting the offer for purchase of their stock or instituting a state proceeding for appraisal. Information about the coal and timber reserves was significant in making this choice because there was no established market for the company's stock and First Boston did not independently evaluate the assets. Information about acreage was less illuminating. The company's business was exploiting mineral and timber resources, not leasing or selling land by the acre. Applying the *TSC Industries* test of materiality, we conclude that information about the magnitude of the coal and timber resources was not, as a matter of law, immaterial. Following the precedent established in *TSC Industries*, 426 U.S. at 450 and 460, 96 S.Ct. at 2133 and 2137, we conclude that the question of materiality should be left to the trier of fact.

Relying on *Twenty Seven Trust v. Realty Growth Investors, Inc.*, 533 F.Supp. 1028 (D.Md.1982), the district court analyzed materiality in terms of the availability of a state injunction. This misconstrues precedent. Other courts properly have looked to the availability of state injunctive relief when the alleged omissions related to a shareholder's choice between seeking a state injunction or accepting the proposed transaction. *See, e.g., Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641, 647 (3d Cir.1980); *Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 614 (5th Cir.1979); *Goldberg v. Meridor*, 567 F.2d 209, 219 (2d Cir.1977). But if an injunction would have been unavailable in any event, the omission is not material. *See Santa Fe*, 430 U.S. at 474 n. 14, 97

S.Ct. at 1301 n. 14. Considering materiality in terms of the availability of injunctive relief is not the exclusive way to test the materiality of omissions from proxy materials involving a squeeze merger.

The omissions in the proxy materials related to the choice of Western Maryland minority shareholders between acceptance of the offered price and appraisal under state law. The district court's analysis of materiality in light of state injunctive remedies was therefore inappropriate. *See generally Madison Consultants v. Federal Deposit Insurance Corp.*, 710 F.2d 57, 62–64 (2d Cir.1983). In contrast, assessing materiality in terms of its relevancy to a shareholder's decision over whether to accept the company's offer or to institute a state proceeding for appraisal is consistent with the rationale of *Santa Fe*, 430 U.S. at 474, 97 S.Ct. at 1301. On remand, the trier of fact should determine whether the omissions are material in accordance with the test prescribed in *TSC Industries*, 426 U.S. at 449, 96 S.Ct. at 2132.

### IV

The district court dismissed Lockspeiser's claim based on Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. § 240.14a–9, because of its conclusion that Lockspeiser failed to allege material omissions. The court observed that Section 10(b) and Section 14(a) share the same standard of materiality. *See TSC Industries*, 426 U.S. at 445–46 n. 8, 96 S.Ct. at 2130–31 n. 8; *Seaboard World Airlines, Inc. v. Tiger International, Inc.*, 600 F.2d 355, 361 n. 8 (2d Cir.1979). For the reasons stated in part III, we vacate the district court's dismissal of the Section 14(a) claim.

### V

Because we conclude that dismissal of Lockspeiser's claims based on Sections 10(b), 14(a), and their corresponding rules was inappropriate, we must also vacate the remaining parts of the judgment. They are too closely related to the principal claims to survive. Accordingly, on remand the district court should reconsider in the light of this opinion its dismissal of the claim against CSX as a controlling person under Section 20(a), 15 U.S.C. § 78t(a), its denial of the motion to amend, and the dismissal of the pendent state claims.

Lockspeiser shall recover his costs.

VACATED AND REMANDED.