Margaretha WALK, an Individual, and Maurice Walk, Trustees for the Cynthia Walk Trust, the Dinand M. Walk Trust, and the Margaretha Walk Trust, and Vincent Ciarlante

v.

The BALTIMORE AND OHIO RAILROAD, the Chesapeake and Ohio Railroad and the CSX Corporation.

Civ. No. S–87–488.

United States District Court, D. Maryland.

May 6, 1987.

John B. Isbister, Tydings & Rosenberg, Baltimore, Md., Michael P. Malakoff, Ellen M. Doyle, Berger, Kapetan, Malakoff & Meyers, P.C., Pittsburgh, Pa., for plaintiffs.

Wilbur D. Preston, Jr., Richard Magid, Ward B. Coe, II, William F. Ryan, Whiteford, Taylor & Preston, Baltimore, Md., for defendants.

SMALKIN, District Judge.

This is a three-count civil action before the Court on a pre-answer amended complaint, filed pursuant to 28 U.S.C. §§ 1331 and 1332, by minority shareholders of the B & O Railroad. (They seek class action status.) The first two counts claim civil violations of the Racketeer Influenced and Corrupt Organizations [RICO] statute, 18 U.S.C. § 1961 *et seq.* The third count claims violation of a state-law based fiduciary duty owed to the minority B & O shareholders by the defendant C & O, and its parent CSX, as owners of the majority interest in B & O. The matter is now before the Court on the defendants' motion to dismiss the amended complaint, which has been briefed and opposed. No oral argument is necessary. Local Rule 6, D.Md.

■ The Court is convinced beyond a doubt, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), that this complaint fails to state a civil RICO claim under 18 U.S.C. § 1962, because it does not allege, nor could it be further amended to allege, a legally sufficient "pattern of racketeering activity." Although the complaint recites a prolix catalogue of events and "schemes" going back many years (to 1977) and involving a number of persons and entities other than B & O minority shareholders, it shows no "pattern of racketeering activity" as that statutory RICO requirement has been interpreted in the Fourth Circuit. In *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987), the Court stated that the "pattern of racketeering activity" requirement was intended to limit civil RICO to "those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits" certain crimes. Clearly, this complaint is inadequate to characterize the defendants as persons who regularly commit federally indictable fraud. In fact, the discrete predicate acts of criminal fraud apparently alleged in this complaint include only certain activities pertaining to debenture holders in 1977, already the subject of another lawsuit, and the mailing of a supplemental brief in that lawsuit in 1982 (Amended Complaint, ¶¶ 32–36), the mailing of two proxy statements on March 18, 1983 (*id.*, ¶¶ 40, 46), and the mailing of a press release and notice pertaining to the challenged merger. (*Id.*, ¶¶ 58, 61). As noted by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 19, 87 L.Ed.2d 346 (1985), two predicate criminal racketeering acts are necessary, but not sufficient, to make out a pattern of racketeering activity. In the Fourth Circuit, what suffices has been settled by *International Data Bank:*

> What constitutes a RICO pattern is thus a matter of criminal dimension and degree. To allow a "pattern of racketeering" to flow from a single, limited scheme such as this one would undermine Congress' intent that RICO serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being. The present case does not involve a "pattern of racketeering," but ordinary claims of fraud best left to "the state common law of frauds" and to "well-established federal remedial provisions."

812 F.2d at 155.

Despite plaintiffs' counsel's ingenuity in identifying multiple fraudulent "schemes," as portrayed in their dismissal opposition (filed May 5, 1987) at 3–4, there is but one real "scheme" alleged in this case, and that has to do with the valuation of minority shares and the treatment of minority shareholders in the B & O. The carefully sifted sands through which plaintiffs have combed to find their "schemes" do not form any firm foundation for characterizing the railroad defendants as persons whose criminal conduct poses a ·"special threat to social well-being." *Id.* In short, this case involves ordinary claims of fraud, and no more, which are best left to state law. Thus, it fails to state a claim under RICO, and counts 1 and 2 will be dismissed by an order to be entered separately, for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Count 3 alleges breach of fiduciary duty to minority shareholders, but it utterly fails to show any legally cognizable, timely-asserted injury to them short of the allegedly less-than-fair value presently being offered for their stock. The claims relating to the treatment of B & O minority shareholders arising from or at issue in the "PTC" litigation are clearly barred by limitations or are foreclosed by the judgment rendered March 31, 1987 by the United States District Court for the Northern District of Ohio in *Pittsburgh Terminal Corp. v. The Baltimore and Ohio Railroad, et al.,* —— F.Supp. ——, Civil No. C 84–1269, a situation that plaintiffs' opposition does not address. This Court is of the opinion that the remaining claim in the third count, *viz.*, freeze-out of minority shareholders at an inadequate price (which is the only claim really at issue, *see, e.g.*, plaintiffs' opposition at 34, first full paragraph), is not cognizable under Maryland law as pleaded,

because the plaintiffs can avail themselves of the remedy of appraisal, as provided in *Md. Corps. & Assn's Code Ann.* §§ 3–106 and 3–201—3–212 (1957, 1985 Repl.Vol.).

Although Judge Miller of this Court recognized that the sole minority shareholder of a Maryland corporation in a short-form merger might have a cause of action for breach of fiduciary duty in *very* limited circumstances, *Twenty Seven Trust v. Realty Growth Investors*, 533 F.Supp. 1028, 1037–39 (D.Md.1982), he held that "inadequacy of price [offered for minority shares] alone does not warrant court intervention in corporate affairs." *Id.* at 1039, *citing Homer v. Crown, Cork & Seal Co.*, 155 Md. 66, 79–86, 141 A. 425, 431–34 (1928). *Homer* is still good law in Maryland. *See Lerner v. Lerner*, 306 Md. 771, 780–81, 511 A.2d 501 (1986). Here, inadequacy of the price being offered for the minority shares is the only *real* issue in Count III, and the non-statutory cause of action pleaded therein is not recognized in Maryland law. In the language of *Homer* itself, the question is whether, on a reading of the entire complaint, it appears to the court that "the fundamental issue thus made is not fraud but a debatable controversy over value...." 155 Md. at 80, 141 A. 425. If fraud is not the fundamental issue, then, under *Homer*, the statutory appraisal is the exclusive remedy. A close reading of the amended complaint's attempted particularizations of "fraud" in connection with the merger, at ¶¶ 71–73, shows that these claims are no more than conclusory disagreements with income and asset valuations, stock valuations, and methods of accounting, which fall far short of establishing the requisite fraud under *Homer* to warrant an injunction against the merger. Looking at the individual allegations of fraud, the short-line sale contention of ¶ 71.a. does not, by itself or in conjunction with ¶ 67, adequately demonstrate the requisite fraud under *Homer*, because, *inter alia*, there is no allegation that the intention to sell short lines was in fact *in esse* before the merger price was announced. The allegations of failure to make public projections of income and late reporting of income do not adequately

plead the requisite fraud. (There is no duty to make public projections of income identified by plaintiffs under Maryland law.) Thus, ¶ 71.b. does not make out a sufficient case of fraud under *Homer*. Paragraph 72 attacks the integrity of the independent financial advisor, not of defendants, and there is no sufficient allegation of a duty on the part of defendants to make disclosures of Morgan Stanley's activities so as to make out a case of fraud under *Homer*. Whether taken alone or together, these attempted allegations of fraud convince the Court that fraud is not the essence of the plaintiffs' claim. Rather, here, as in *Homer*, the fundamental issue is inadequate price, and the few acts of "fraud" identified by plaintiffs are insufficient, as a matter of law, to make out together or separately the species of fraud required to be shown before a Maryland equity court will enjoin a short form or "cashout" merger. Because the statutory appraisal mechanism is not pleaded by plaintiffs here, and because it constitutes an adequate and exclusive remedy under Maryland law as applied to the facts of this case, plaintiffs' third claim also fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and it, too, will be dismissed by the Order accompanying this Memorandum Opinion.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS, this 6th day of May, 1987, by the Court, ORDERED:

1. That plaintiffs' amended complaint BE, and the same hereby IS, DISMISSED, for failure to state a claim upon which relief can be granted; and

2. That the Clerk of Court mail copies of the foregoing Memorandum Opinion and of this Order to counsel for the parties.